**OLD SOUTH HOME COMPANY,**
Plaintiff,

v.

**KEYSTONE REALTY GROUP, INC.; Keystone Group, Inc.; W. Scott Wallace; and Mark Michael, Defendants.**

No. CIV.1:02–CV–00459.

United States District Court,
M.D. North Carolina.

Nov. 22, 2002.

Robert Harper Heckman, Gregory Todd Higgins, Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, for Old South Home Co.

Michael John Allen, Carruthers & Roth, P.A., Greensboro, NC, for Keystone Realty Group, Inc.

Rodney E. Pettey, Yates McLamb & Weyher, Raleigh, NC, Michael John Allen, carruthers & Roth, P.A., Greensboro, NC, for Keystone Group, Inc., W. Scott Wallace, Mark Michael.

*MEMORANDUM OPINION*

BULLOCK, District Judge.

On June 11, 2002, Old South Home Company ("Plaintiff") filed suit against Keystone Realty Group, Inc., Keystone Group, Inc., W. Scott Wallace, and Mark Michael (hereinafter collectively referred to as "Defendants") alleging infringement of Plaintiff's purported copyrights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*, and unfair and deceptive trade

practices in violation of the North Carolina Unfair Trade Practices Act ("NCUTPA"), N.C. Gen.Stat. 75–1.1.

This matter is before the court on a motion to dismiss by Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff's claim for violation of the NCUTPA. For the following reasons, the court will grant Defendants' motion to dismiss.

## FACTS

Plaintiff and Defendants are involved in the design, construction, and sale of residential developments. In 2000, Plaintiff created an original home design named "The Parker." Plaintiff hired an architectural firm to produce architectural drawings for the Parker design. On March 22, 2002, the architectural firm assigned to Plaintiff all of its rights, title, and interest in the Parker drawings.

Plaintiff subsequently created and distributed marketing brochures depicting the Parker design and built and sold homes derived from the architectural drawings. Plaintiff also created materials that provided information on the features of its home designs and communities in which its home designs were built and sold. In 2002, Plaintiff registered its copyrights in the drawings and other materials prepared for the marketing of the Parker design.

During the five-year period preceding the filing of this complaint, Plaintiff avers that several of its former employees left their employment with Plaintiff to begin work with Defendants. Each of these employees had access to the marketing materials and drawings of the Parker. Plaintiff further avers that, after its former employees began employment with Defendants, Defendants infringed Plaintiff's copyrights by reproducing, preparing derivative works, distributing copies, and displaying Plaintiff's works. Specifically, Plaintiff alleges that Defendants infringed its copyrights by preparing plans for constructing and marketing a home design called "The Bradley," which Plaintiff asserts is nearly identical to the Parker.

Plaintiff's first claim seeks damages for Defendants' infringement of Plaintiff's copyrights. Plaintiff's second claim seeks to enjoin Defendants from further violating Plaintiff's copyrights. Plaintiff's third claim, which is the subject of this motion, alleges that Defendants' infringement was committed in order to "unfairly compete with plaintiff and to enhance defendants' own ability to sell home construction services in the North Carolina real estate market." (Compl.¶ 40.) Plaintiff also avers that, as a result of Defendants' conduct, the trade and public are "likely to be misled into believing, contrary to fact, that, plaintiff has distributed, constructed, designed, sponsored, endorsed, marketed, approved or licensed the Infringing Products", namely the Bradley homes. (*Id.* ¶ 41.) Plaintiff contends that this conduct constitutes unfair and deceptive trade practices in violation of the NCUTPA.

## DISCUSSION

The court may dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Revene v. Charles County*

*Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds* by *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

Plaintiff's third claim alleges unfair and deceptive trade practices by Defendants in violation of the NCUTPA. Defendants, however, argue that this claim is preempted by the federal copyright laws. The preemption of state law causes of action by federal copyright law is addressed in 17 U.S.C. § 301. Section 301 of the Copyright Act provides:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (1996). Thus, state law claims are preempted if " 'the work is within the scope of the "subject matter of copyright" as specified in [Sections 102 and 103]' and 'the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in [Section 106].' "[1] *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir.1993) (quoting *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir.1985)). Therefore, a state law cause of action that in-

fringes an exclusive right granted by Section 106 is preempted if the state law right "may be abridged by an act which, in and of itself, would infringe one of the exclusive rights." *Id.*

If, however, the state cause of action requires an "extra element" instead of or in addition to the acts of reproduction, distribution or display in order to establish the claim, the state cause of action is not preempted. *Id.* But, the "extra element" must also change the " 'nature of the action so that it is *qualitatively* different from a copyright infringement claim.' " *Id.* at 230 (citation omitted). Accordingly, "[i]n order to ascertain whether a specific state cause of action involves a right equivalent to one of those identified in § 106, reference must be made to the elements of the state cause of action." *Id.* at 229.

To establish a *prima facie* claim for unfair trade practices under the NCUTPA, a plaintiff must establish that: (1) the defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that the plaintiff was injured thereby. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Unfair or deceptive acts or practices are acts that offend public policy and that are immoral, unethical, or substantially injurious to consumers, as well as acts that possess the tendency or capacity to mislead. *See Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C.App. 360, 367, 533 S.E.2d 827, 832 (2000); *Miller v. Rose*, 138 N.C.App. 582, 592, 532 S.E.2d 228, 235 (2000).

Plaintiff contends that these elements of an unfair trade practices claim are "extra elements" that make the unfair trade practices claim qualitatively different from a

---

**1.** Section 106 of the Copyright Act grants a copyright owner exclusive right to: (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work by sale or otherwise; (4) perform the work publicly; and (5) display the work publicly. 17 U.S.C. § 106.

copyright infringement claim, and therefore prevent preemption of the state cause of action. While these elements may indeed be extra elements in that they must be proved to establish an unfair trade practices claim under the NCUTPA, they do not *per se* make the unfair trade practices claim qualitatively different from a copyright infringement claim. *See, e.g., Bell v. E. Davis Int'l, Inc.,* 197 F.Supp.2d 449, 462–63 (W.D.N.C.2002) (NCUTPA claim preempted by Copyright Act); *Patsy Aiken Designs, Inc. v. Baby Togs, Inc.,* 701 F.Supp. 108, 110–12 (E.D.N.C.1988) (same). "Examples of extra elements in unfair competition claims that [do] avoid preemption include: breach of fiduciary duty, breach of a confidential relationship, and palming off the defendant's products as those of the plaintiff's." *Kindergartners Count, Inc. v. Demoulin,* 171 F.Supp.2d 1183, 1191 (D.Kan.2001).

Plaintiff alleges that Defendants infringed its copyrights in order to "unfairly compete" with Plaintiff. Plaintiff, however, has not specifically alleged any unethical or immoral conduct other than that implicit in any willful copyright infringement claim. The fact that several of Plaintiff's former employees joined Keystone adds nothing to Plaintiff's claims because there is no allegation that those employees breached any confidentiality agreement or had access to materials that had not previously been available to the public through Plaintiff's own marketing efforts. The alleged misconduct at issue is Defendants' reproduction and replication of Plaintiff's drawings and marketing materials, which is the type of conduct the copyright laws are specifically designed to guard against. "To call [Defendants'] conduct immoral [or unethical] adds nothing," it merely "alters the *scope* of the action but not its nature." *Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. 1523, 1535 (S.D.N.Y.1985); *see also Rosciszewski,* 1 F.3d at 230 (stating that "elements such as awareness or in-

tent, which alter 'the action's scope but not its nature' " will not save an action from preemption). "That is, it would permit the [state] action to go forward when the infringing conduct is immoral, but not when it is not immoral. The basic act which constitutes the infringement of plaintiff's rights, however, is the same as that of copyright." *Mayer,* 601 F.Supp. at 1535. Therefore, "elements such as awareness, intent, or commercial immorality are not qualitatively different so as to prevent preemption." *Kindergartners,* 171 F.Supp.2d at 1191 (citation omitted); *Rosciszewski,* 1 F.3d at 230; *Mayer,* 601 F.Supp. at 1535–36.

In addition to Defendants' alleged immoral and unethical conduct, Plaintiff alleges that Defendants' conduct is likely to mislead and confuse the public. Plaintiff posits that its claim involves a charge of "passing off" or "palming off." (Pl.'s Br. Resp. Mot. Dismiss at 9.) That is, Plaintiff speculates that consumers are likely to be misled into thinking that the Bradley was in fact the Parker. The passing off of one's product as that of another is cognizable under the NCUTPA. *See Harrington Mfg. Co., Inc. v. Powell Mfg. Co., Inc.,* 38 N.C.App. 393, 404, 248 S.E.2d 739, 746 (1978). However, Plaintiff has not alleged that Defendants have affirmatively attempted to pass off their Bradley design as that of Plaintiff. Therefore, it is questionable whether Plaintiff's complaint would state a cause of action under the NCUTPA.

Possible consumer confusion alone is not enough to avoid preemption. *See Patsy Aiken,* 701 F.Supp. at 111. Every copyright violation conceivably could involve some degree of consumer confusion as to the true source of the protected materials. Therefore, to avoid preemption of a state law claim based on the possibility of consumer confusion, there must be at least an

allegation of an affirmative act of misrepresentation in addition to copying. *Id.* at 111–12.

While Plaintiff has alleged that consumers "are likely to be misled, contrary to fact, that, plaintiff has distributed, constructed, designed, sponsored, endorsed, marketed, approved or licensed" Defendants' products (Compl.¶ 41), it has "alleged no acts of misrepresentation by [D]efendants 'other than by an inference arising from the mere act of copying.'" *Patsy Aiken,* 701 F.Supp. at 112 (quoting *Compco Corp. v. Day–Brite Lighting, Inc.,* 376 U.S. 234, 239, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964) (Harlan, J., concurring)). Apart from the allegations that Defendants copied Plaintiff's drawings and marketing materials, Plaintiff has made no allegation that suggests Defendants engaged in any affirmative acts of misrepresentation that would amount to an effort to palm off the Bradley as the Parker.

In support of its position, Plaintiff principally relies on two cases in which courts have held that a claim of unfair and deceptive trade practices was not preempted. The Fifth Circuit, in analyzing the Louisiana Unfair Trade Practices Act, stated that "[b]ecause a cause of action under the Louisiana Unfair Trade Practices Act requires proof of fraud, misrepresentation or other unethical conduct," it was not equivalent to a cause of action for copyright infringement. *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.,* 220 F.3d 396, 404–05 (5th Cir.2000). In *Stephen & Hayes Constr., Inc. v. Meadowbrook Homes, Inc.,* the court held that Illinois' Uniform Deceptive Trade Practices Act was not preempted by the Copyright Act because the Illinois statute was infringed not by the mere act of reproduction but by conduct that creates a "likelihood of confusion." 988 F.Supp. 1194, 1196–97 (N.D.Ill.1998).

In each of these cases, however, in addition to the extra element identified by the courts, there were allegations of additional misconduct by the defendants that qualitatively changed the nature of the state cause of action. In *Computer Mgmt.,* the court held the state claim was not preempted because it required proof of fraud, misrepresentation, or other unethical conduct. In addition to this extra element, however, it was the allegation that the defendants breached a confidential relationship when they used "privileged knowledge of the intricacies of the software" that made the state law claim qualitatively different. 220 F.3d at 404. Similarly, in *Stephen & Hayes,* the court focused not on the mere fact that the defendant, by copying the plaintiff's home plans and promotional materials, created consumer confusion, but on the defendant's "'utilization' of [the plaintiff's] model homes to entice potential customers to purchase its homes." 988 F.Supp. at 1199. The plaintiff alleged that the defendant "directed home buyers interested in [its] homes who could not view [its] completed homes to view particular homes built by [the plaintiff] because the [defendant's] and [the plaintiff's] homes were identical." *Id.* at 1196. It was this affirmative act of misrepresentation that changed the nature of the unfair trade practices claim.

Unlike these cases, Plaintiff's extra elements do not qualitatively change the nature of its unfair trade practices claim. Plaintiff has not alleged any breach of a confidential relationship or any affirmative acts of misrepresentation by Defendants. In sum, "if [Defendants are] selling [Defendants'] products and representing to the public that they are [Defendants'] products, a claim by [Plaintiff] that [Defendants'] products replicate [Plaintiff's] is a disguised copyright infringement claim and is preempted." *Kindergartners,* 171

F.Supp.2d at 1191 (citation omitted). Plaintiff has made no contention that Defendants have done anything other than copy Plaintiff's copyrighted material. Accordingly, assuming Plaintiff's allegations sufficiently state a claim for unfair and deceptive trade practices in violation of the NCUTPA, Plaintiff does not allege that Defendants violated any right other than the exclusive rights guaranteed under Section 106 of the Copyright Act. Therefore, because Plaintiff has not alleged any aggravating circumstances that qualitatively change the nature of its unfair trade practices claim, Plaintiff's third claim for relief is preempted.

## CONCLUSION

For the reasons set forth in this memorandum opinion, the court will grant Defendants' motion to dismiss Plaintiff's third claim for relief.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## ORDER

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendants' motion [Doc. # 11] to dismiss Plaintiff's third claim for relief under the North Carolina Unfair Trade Practices Act is **GRANTED**, and Plaintiff's third claim for relief is **DISMISSED** with prejudice.