Lorillard Tobacco Co. v. R.J. Reynolds Tobacco Co., 2011 NCBC 30.

STATE OF NORTH CAROLINA    IN THE GENERAL COURT OF JUSTICE
COUNTY OF GUILFORD         SUPERIOR COURT DIVISION
                                    10 CVS 11471

LORILLARD TOBACCO COMPANY and )
LORILLARD LICENSING COMPANY,  )
LLC,                          )
                              )
            Plaintiffs,       )
                              )
       v.                     )          **ORDER**
                              )
R.J. REYNOLDS TOBACCO         )
COMPANY,                      )
                              )
            Defendant.        )
                              )

{1} THIS MATTER is before the Court on Plaintiffs' Motion to Dismiss Count III of Counterclaim Pursuant to Rule 12(b)(6) And To Strike Portions of Defendant's Prayer for Relief ("Motion"). For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jim W. Phillips, Jr. and Clint S. Morse, and Locke Lord Bissell & Liddell LLP, by Harry C. Marcus and Jason Nardiello,* pro hac vice*, for Plaintiffs Lorillard Tobacco Company and Lorillard Licensing Company, LLC.*

*Kilpatrick Townsend & Stockton LLP, by Daniel R. Taylor, Jr., Adam H. Charnes, and Chad D. Hansen, for Defendant R.J. Reynolds Tobacco Company.*

## I. INTRODUCTION

{2} The North Carolina Court of Appeals has held that a plaintiff who files an "objectively reasonable" lawsuit cannot be held liable for an unfair trade practice under N.C. Gen. Stat. § 75–1.1 regardless of the plaintiff's subjective intent and

even if the suit was instituted for "no legitimate purpose." *Reichold Chems., Inc. v. Goel,* 146 N.C. App. 137, 157, 555 S.E.2d 281, 293 (2001). The Motion requires the Court to determine whether Count III of Defendant's Counterclaim alleges facts adequate to state a claim for an unfair trade practice that falls within the "sham litigation" exception to the *Noerr-Pennington* immunity doctrine on which the *Reichold* opinion rests. That inquiry, in turn, requires the Court to consider whether, accepting the allegations of the Counterclaim as true and allowing all favorable factual inferences from those facts, the Court can and should make that determination as a matter of law without need for further discovery. The controlling ultimate issue is whether Plaintiffs' Complaint is "objectively reasonable." If it is, Plaintiffs' subjective intent in filing the suit is irrelevant, and further inquiry into that intent is not necessary. Plaintiffs contend that the inquiry is pursuant to an objective standard that can be satisfied on the face of the pleadings; Defendant contends that the inquiry necessarily includes fact considerations which must at least await summary judgment.

{3} The controversy centers on the provisions of the "Settlement Agreement," which was entered into between Plaintiffs Lorillard Tobacco Company and Lorillard Licensing Company, LLC (collectively, "Lorillard") and Defendant R.J. Reynolds Tobacco Company ("RJRT") to resolve *inter partes* litigation before the United States Patent and Trademark Office ("USPTO") and which relates to the use of the term "pleasure" in connection with the advertisement and sale of tobacco products. The Settlement Agreement provides restrictions on both RJRT's use of the term in some respects and on Lorillard's right to challenge RJRT's use of the term in other respects. The Settlement Agreement by its release language resolved claims regarding uses prior to its effective date. Lorillard complains that RJRT has used the term inconsistently with the Settlement Agreement. RJRT counterclaims that Lorillard has brought a suit it promised not to bring, and that its doing so was a deliberate and willful effort to restrain competition. That is, Count III of RJRT's Counterclaim asserts that the suit is "sham litigation" outside of any protection afforded by the *Noerr-Pennington* doctrine.

{4} The Motion does not require the Court to determine whether Lorillard may ultimately prevail on the issue of whether RJRT's uses of which it complains are proscribed by the Settlement Agreement. The Court need only decide whether the pleadings demonstrate that Lorillard's claim is objectively reasonable. The Court concludes that it is.

## II.  PROCEDURAL HISTORY

{5}  Plaintiffs filed their action in Guilford County Superior Court on November 5, 2010, after which the matter was designated as a Complex Business Case. Plaintiffs assert three claims: 1) breach of contract based on the Settlement Agreement; 2) common law unfair competition; and 3) unfair and deceptive trade practices under N.C. Gen. Stat. Section 75–1.1 ("Section 75–1.1"). On January 10, 2011, RJRT answered and asserted three Counterclaims: 1) Declaratory Judgment seeking to interpret the Settlement Agreement; 2) Breach of Contract by reason of Plaintiffs filing the Complaint in contravention of promises in the Settlement Agreement; and 3) a Section 75–1.1 claim that Lorillard's filing of its Complaint was an unfair trade practice. On May 23, 2011, Lorillard filed its Motion. The Motion has been fully briefed, the Court heard oral argument, and the matter is ripe for disposition.

## III.  STATEMENT OF FACTS[1]

{6}  Lorillard Tobacco Company and Lorillard Licensing Company, LLC are corporations organized and existing under the laws of the State of North Carolina, based in Greensboro, North Carolina. (Countercl. ¶¶ 6–7.) The former manufactures and sells tobacco products, including NEWPORT brand cigarettes;

---

[1] The statement of facts assumes all the allegations of the Counterclaim are true and construes inferences from such facts in Defendant-Counterclaimant's favor. *See Regions Bank v. Reg'l Prop. Dev. Corp.,* 2008 NCBC ¶¶40–41 (N.C. Super. Ct. Apr. 21, 2008).

the latter owns all relevant trademark and trade dress rights associated with the NEWPORT cigarette brand. (*Id.*) RJRT is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Winston-Salem, North Carolina. RJRT[2] is engaged in the business of manufacturing and selling tobacco products, including CAMEL brand cigarettes and CAMEL brand snus, a smokeless tobacco product. (*Id.* ¶ 5.)

{7} In 2005, Lorillard applied to the USPTO to register the mark, PLEASURE[3] for use in connection with its cigarette products, which application RJRT opposed. (*Id.* ¶ 13.) In 2007, while Lorillard's application was pending, RII applied to the USPTO to register certain phrases that included the word "pleasure" in connection with smokeless tobacco products, which application Lorillard opposed. (*Id.* ¶ 14.) The parties resolved this *inter partes* litigation by the Settlement Agreement with an effective date of July 16, 2009.[4] (*Id.* ¶ 16.)

{8} The Settlement Agreement provided that RJRT agreed to withdraw with prejudice its opposition to Lorillard's application (*Id.* ¶ 17), and Lorillard agreed to withdraw with prejudice its opposition to RII's application. (*Id.* ¶ 18.) The Settlement Agreement had several provisions regarding RJRT's future use of the term "pleasure." RJRT agreed that it "will not use the term PLEASURE alone or in conjunction with any other words as the name of a brand of a tobacco product." (*Id.* ¶ 19.) RJRT further agreed that it "will not use the term PLEASURE alone in the advertising or promotion of any tobacco product, or in any manner creating a commercial impression associating the term PLEASURE alone with the brand name of a tobacco product." (*Id.* ¶ 20.) The Settlement Agreement elaborated that

---

[2] The Settlement Agreement defined RJRT to include Reynolds Innovations Inc. ("RII"), a trademark holding company and subsidiary of RJRT. Likewise, this Order includes RII within the term RJRT where appropriate.

[3] The parties variously use the terms "pleasure" and "PLEASURE." The Court understands that the distinction between the two is not relevant to the current controversy.

[4] RJRT incorporated the Settlement Agreement into its Counterclaim by attaching as an "Exhibit 1" so it is properly considered as part of the pleadings for purposes of this Motion. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E. 2d 840, 847 (2001).

"by 'the term PLEASURE alone,' the Parties mean that RJRT will only use the term PLEASURE as part of a composite phrase and not in a way that creates a commercial impression in the term PLEASURE separate and apart from such composite phrase." (*Id.* ¶ 21.) The Parties further provided that "[b]y way of example, RJRT will not significantly distinguish the term PLEASURE from other words in a composite phrase in a way that makes the term PLEASURE significantly more prominent than the other words in the composite phrase." (*Id.* ¶ 22.) The Parties specified an example of an advertisement that would not be permitted because of the comparative emphasis on the term "PLEASURE." (*Id.* ¶ 23.)

{9} In return for these restrictions on RJRT's use, Lorillard agreed that "[it] will not assert its rights under any registration issuing from the Lorillard PLEASURE Application, or any other alleged federal or state statutory or common law rights in the term PLEASURE alone . . . against: (a) the use by RJRT of any permitted composite phrase incorporating the term PLEASURE . . . ." [5] (*Id.* ¶ 24.) Lorillard further released RJRT from any liability for the use of the term "pleasure" up to the date of the Settlement Agreement. (*Id.* ¶ 25.) RJRT alleges that it has used the term "pleasure" since the Settlement Agreement, but only consistently with the uses permitted by that agreement. (*Id.* ¶¶ 26–29.) Some of the uses of which Lorillard complains were in use by RJRT before the Settlement Agreement, although Lorillard denies having knowledge of those uses at that time. Particularly, Lorillard catalogs some of RJRT's internet domain and sub-domain names which incorporate the term "pleasure" such as, for example, "camel.tobaccopleasure.com." (Compl. ¶¶19–20; Countercl. ¶¶ 27–28.)

---

[5] The Court has accepted for purposes of the present Motion that each of RJRT's uses of the term "pleasure" of which Lorillard complains is as a part of a "composite phrase." However, this does not necessarily end the inquiry. The Settlement Agreement provides that the use of "the term PLEASURE alone" means that it is <u>both</u> in a composite phrase <u>and</u> not in a manner creating a commercial impression associating the term alone with the brand name of a tobacco product. (Countercl. ¶ 21.)

{10} Lorillard and RJRT now each contend that the other has breached the Settlement Agreement. Lorillard contends that RJRT has, since the date of the Settlement Agreement, used the term "pleasure" in ways that it undertook not to do by the Settlement Agreement. RJRT contends that it has only used the term as expressly permitted by the Settlement Agreement, and Lorillard has breached the Settlement Agreement by bringing a suit that it promised not to bring. RJRT, in Count II of its Counterclaim, asserts that Lorillard breached its contractual promise not to assert a trademark claim because of an RJRT use permitted by the Settlement Agreement. (*Id.* ¶ 37.) In Count III, RJRT amplifies its claim by asserting that Lorillard committed an unfair trade practice by deliberately and willfully filing the complaint to stifle competition. (*Id.* ¶ 46.)

{11} RJRT's prayer for relief seeks punitive damages, treble damages, and attorneys' fees. In addition to its request to dismiss Count III, Lorillard seeks to strike each of these elements of damages from RJRT's prayer for relief. RJRT concedes that the prayers for punitive damages and treble damages depend on Count III of the Counterclaim, but it contends that the prayer for attorneys' fees may be supported by other claims.[6]

## IV. STANDARD OF REVIEW

{12} The appropriate inquiry upon a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo,* 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008); *Harris v. NCNB Nat'l Bank of N.C.,* 85 N.C. App. 669, 670–71, 355 S.E.2d 838, 840–41 (1987). "The complaint is to be liberally construed, and the court should not dismiss the complaint 'unless it appears beyond a doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief.'"

---

[6] (*See* Defendant's Mem. In Opp'n to Pls.' Mot. to Dismiss and Mot. to Strike 20 n.6.)

*Holloman v. Harrelson*, 149 N.C. App. 861, 864, 561 S.E.2d 351, 353 (quoting *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987)), *disc. review denied*, 355 N.C. 748, 565 S.E.2d 665 (2002). The Court need not determine that the plaintiff will ultimately prevail in order to deny the motion to dismiss; it need only determine whether plaintiff has adequately pled a claim that allows plaintiff to introduce evidence in support of the claim. *Johnson v. Bollinger,* 86 N.C. App. 1, 4, 354 S.E.2d 378, 381 (1987) (citation omitted). However, dismissal is warranted when the complaint "may consist . . . of facts which will necessarily defeat the claim as well as where there is an absence of law or fact necessary to support a claim." *Sutton v. Duke*, 277 N.C. 94, 102–03, 176 S.E.2d 161, 166 (1970). "When considering a motion under Rule 12(b)(6), the court is not required to accept as true any conclusions of law or unwarranted deductions of fact in the complaint." *Branch Banking & Trust Co. v. Lighthouse Fin. Corp.*, 2005 NCBC 3 ¶ 8 (N.C. Super. Ct. July 13, 2005).

## V. ANALYSIS

{13} Lorillard's Motion asserts that RJRT cannot state a claim for an unfair trade practice based on the filing of the Complaint which is, on its face, "objectively reasonable," and that further discovery seeking to determine Lorillard's subjective intent in bringing the suit or its belief in its chances for success are irrelevant. That is, Lorillard claims that it is immune from any Section 75–1.1 claim grounded on its having brought the litigation.

{14} If immunity does not apply, Count III of RJRT's Counterclaim alleges the essential elements of a Section 75–1.1 claim, which are: 1) an unfair or deceptive act or practice; 2) affecting commerce; and 3) which proximately causes actual injury. *Poor v. Hill*, 138 N.C. App. 19, 27, 530 S.E.2d 838, 844 (2000); *see also, Strickland v. Lawrence*, 176 N.C. App. 656, 665, 627 S.E.2d 301, 307 (2006). "[A] practice is unfair when it offends established public policy" and "when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious

to consumers.*" Eastover Ridge, L.L.C. v. Metric Constructors, Inc.,* 139 N.C. App. 360, 367, 533 S.E.2d 827, 832 (2000) (quoting *Warfield v. Hicks,* 91 N.C. App. 1, 8, 370 S.E.2d 689, 693, *disc. review denied,* 323 N.C. 629, 374 S.E.2d 602 (1988)) (citations omitted). "The fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others." *McDonald v. Scarboro*, 91 N.C. App. 13, 18, 370 S.E.2d 680, 684 (1988). For a practice to be deceptive, it must "possess the tendency or capacity to mislead." *Forsyth Mem'l Hosp. v. Contreras*, 107 N.C. App. 611, 614, 421 S.E.2d 167, 170 (1992). Whether a particular commercial act or practice constitutes an unfair or deceptive trade practice is a question of law. *Norman Owen Trucking, Inc. v. Morkoski,* 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998); *see also, First Union Nat'l Bank v. Brown,* 166 N.C. App. 519, 603 S.E.2d 808, 819 (2004).

{15} Consistent with the Rule 12(b)(6) standard of review, the Court must assume that Lorillard had an anti-competitive intent in bringing the suit. Likewise, the Court for purposes of the present Motion, assumes that RJRT will ultimately prove that Lorillard breached the Settlement Agreement by filing its Complaint. Proof of that breach of contract would not alone mean that RJRT would have proven an unfair trade practice. "It is well recognized . . . that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [Chapter 75]." *Eastover Ridge, L.L.C.,* 139 N.C. App. at 367, 533 S.E.2d at 832; *Branch Banking and Trust Co. v. Thompson,* 107 N.C. App. 53, 62, 418 S.E.2d 694, 700, *disc. review denied,* 332 N.C. 482, 421 S.E.2d 350 (1992) (citations omitted). To become an unfair trade practice, the breach of contract must be "characterized by some type of egregious or aggravating circumstance.*" Norman Owen Trucking, Inc.*, 131 N.C. App. at 177, 506 S.E.2d at 273. Here, the alleged egregious or aggravating circumstance is Lorillard's alleged anti-competitive intent. The inquiry, then, is whether an unfair practice has been proven based on such

breach coupled with anti-competitive intent, or whether Lorillard is immunized from such a finding.

{16} The North Carolina Court of Appeals in *Reichold* held that a litigant can be sheltered from liability under Section 75–1.1 by application of the federal *Noerr-Pennington* doctrine. 146 N.C. App. at 156–57, 555 S.E.2d at 293 (referring to *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523 (1961) and *Prof"l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 113 S. Ct. 1920 (1993)). Noting that Chapter 75 was modeled on federal antitrust law, the court held that "federal decisions may provide guidance in determining [its] scope and meaning" and then applied the *Noerr-Pennington* doctrine to Section 75–1.1.[7] *Id.* The court upheld dismissal of the Section 75–1.1 claim, affirming the trial court's conclusion that "though filed for no legitimate purpose, the lawsuit was not utterly baseless." *Id.* at 157, 555 S.E.2d at 293. Because it was not utterly baseless, the suit was "objectively reasonable, and thus . . . did not constitute an unfair trade practice under N.C.G.S. § 75–1.1."[8] *Id.* In so holding, the Court implicitly agreed with the plaintiff's assertion "that a reasonably objective lawsuit can never be an unfair trade practice, under the reasoning of *Noerr* and *PRE.*" *Id.* at 156, 555 S.E.2d at 293. The court explained that a lawsuit is objectively reasonable "[i]f an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome." *Id.* at 146 N.C. App. at 157, 555 S.E.2d at 293 (citation omitted). The court's adoption of *PRE's* reasoning to control Section 75–1.1 means that it conversely follows that the "sham litigation" exception to the *Noerr-Pennington* doctrine would apply to claims under that section when 1) the claim asserted is "objectively meritless" and 2) the court finds "the litigant's subjective motivation" was an unlawful intent to "interfere directly

---

[7] The federal *Noerr-Pennington* Doctrine arose under the federal Sherman Act, on which certain provisions of Chapter 75 are modeled, whereas Chapter 75–1.1 was based on Section 5 of the FTC Act.

[8] However, because the suit was not filed for a legitimate purpose, the court found that the defendant remained exposed to liability for tortious interference with contract claims because there is "no relation" between the state tort and "legislative intent behind federal anti-trust law." *Reichold Chems., Inc.*, 146 N.C. App. at 148, 555 S.E.2d at 288.

with the business relationships of a competitor." *See Prof'l Real Estate Investors, Inc.*, 508 U.S. at 60, 113 S. Ct. at 1928 (describing "sham litigation" as that which is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"). However, the inquiry into subjective intent only follows a finding that the suit is objectively baseless and does not inform that initial objective determination. *Id.; see also United States v. Ward*, 618 F. Supp. 884, 907 (E.D.N.C. 1985), *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 2003 NCBC 4 ¶ 333 (2003).

{17} The Court then turns to the controlling inquiry: whether Lorillard's suit is "objectively reasonable" as a matter of law or whether that determination must await further factual development. While it is true that *Reichold* arose upon review of rulings made on a motion for summary judgment and at trial, *Reichold* was later followed by a North Carolina federal district court opinion which resolved the immunity issue upon a Rule 12(b)(6) motion. *See GoldToeMoretz, LLC v. Implus Footcare, LLC, No.* 5:09−CV−0072, 2010 WL 3474792 (W.D.N.C. Aug. 31, 2010.)[9] RJRT cites federal cases from other circuits for the proposition that the determination of whether the plaintiff's complaint is a sham or a genuine effort to seek judicial redress is inherently a fact question. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 903 (9th Cir. 1983); *Scooter Store, Inc. v. SpinLife.com LLC, No.* 2:10−CV−18, 2011 WL 1460438, at *8 (S.D. Ohio Apr. 18, 2011); *Pactiv Corp. v. Perk-Up, Inc.*, No. 08−05072 (DMC), 2009 WL 2568105, at *14 (D.N.J. Aug. 18, 2009). However, here, the critical "fact" is a determination of the language of the Settlement Agreement compared to the alleged uses of the term "pleasure" complained challenged in the Complaint. The Court concludes that the *Reichold* standard of whether Lorillard's lawsuit is

---

[9] Without citing *Reichold,* another North Carolina federal district court held that "parties bringing or threatening to bring meritorious, good faith claims cannot by definition be subject to liability under [Section 75–1.1]. As such, parties bringing good faith claims . . . do not need the protections of the *Noerr-Pennington* doctrine." *DIRECTTV, Inc. v. Cephas,* 294 F. Supp. 760, 767 (M.D.N.C. 2003).

"utterly baseless" can be determined from the face of the Counterclaim and its incorporated Settlement Agreement. Even if the Court assumes that the suit was otherwise brought "for no legitimate purpose" and with a subjective anti-competitive intent, it can still conclude that the suit is "objectively reasonable" because it is not "utterly baseless."

{18} The issue is to be determined by looking through a lens of reasonable objectivity. That objective perspective demonstrates that Lorillard has a reasoned basis from which to argue that RJRT's use of the term "pleasure" after the Settlement Agreement are not permitted, even though they are used only in composite phrases, because the Settlement Agreement also proscribes a use "in any manner creating a commercial impression associating the term PLEASURE alone with the brand name of a tobacco product." The language of the Settlement Agreement does not so clearly foreclose an argument that the uses catalogued in the pleadings are outside these proscriptions so as to render the Complaint "utterly baseless." Lorillard's subjective intent does not change that initial objective determination.

{19} The Motion would present a much more difficult challenge to Lorillard if Lorillard's claim rested entirely on claimed liability for acts taken by RJRT before the date of the Settlement Agreement. RJRT correctly notes that the release language of the Settlement Agreement would extend to such acts whether or not Lorillard was aware of them when entering the Settlement Agreement. But Lorillard counters that by releasing past liability it did not ratify such acts in the future, and a claim based on acts after the Settlement Agreement are not then "utterly baseless." The Court can agree that this position is not baseless without also concluding that Lorillard's position should ultimately prevail. It need only conclude that asserting the claim is "objectively reasonable." Because it is, liability under Section 75–1.1 based on the "sham litigation" exception is foreclosed. The Motion to dismiss Count III should be granted.

{20} As to the Motion's request to strike portions of RJRT's prayer for relief, RJRT has conceded that it has no claim for punitive damages or treble damages if

Count III is dismissed. RJRT does not make the same concession as to attorneys' fees, and the Court concludes that it is premature to determine whether there is any basis to award attorneys' fees other than pursuant to this Count III. Therefore, that prayer for attorneys' fees in the Counterclaim will not be stricken at this time.

{21} IT IS THEREFORE ORDERED that:

1.   Lorillard's Motion to Dismiss Count III of RJRT's Counterclaim pursuant to Rule 12(b)(6) is GRANTED.

2.   Lorillard's Motion to Strike RJRT's prayer for punitive damages and treble damages is GRANTED.

3.   Lorillard's Motion to Strike the prayer for attorneys' fees is DENIED without prejudice to the Court's later consideration of the issue of whether either party is entitled to an award of attorneys' fees.

It is so ORDERED this 8th day of August, 2011.